IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GEORGE H. SAENZ,
        Plaintiff,

                                              CV. 05-1206-PK

                                              FINDINGS AND
v.                                              RECOMMENDATION

TRANS UNION, LLC,
        Defendant.
_____

PAPAK, Magistrate Judge:

        In August 2005, plaintiff George H. Saenz filed this Fair Credit Reporting Act ("FCRA")

action against defendants Trans Union, LLC ("Trans Union"), Experian Information Solutions,

Inc. ("Experian"), Equifax Information Services LLC ("Equifax"), and NCO Financial Systems,

Inc. ("NCO").  By stipulation of the parties, Saenz' claims against Equifax, Experian, and NCO

have been dismissed with prejudice.  Trans Union is therefore the only defendant now remaining

in this action.

Page 1 - FINDINGS AND RECOMMENDATION

Saenz raises claims under 15 U.S.C. § 1681o (alleging negligent violation of the FCRA) and under 15 U.S.C. § 1681n (alleging willful violation of the FCRA). Each claim is premised on Trans Union's alleged violation of two separate FCRA provisions, namely 15 U.S.C. § 1681e(b) (obliging consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy" of consumer reports) and 15 U.S.C. § 1681i (obliging consumer reporting agencies to "conduct a reasonable reinvestigation" of information contained in a consumer report once that information has been disputed by a consumer). Trans Union now seeks summary judgment on both claims. In the alternative, Trans Union requests partial summary judgment as to each of Saenz' claims to the extent premised on negligent and/or willful violation of Section 1681e(b), as to each of his claims to the extent premised on negligent and/or willful violation of Section 1681i, as to his entitlement to economic and emotional distress damages, and as to his entitlement to punitive damages.

This court has considered Trans Union's motion (#43), the pleadings on file, and oral argument on behalf of both parties. For the reasons set forth below, this court recommends that Trans Union's motion for summary judgment be denied. This court further recommends that Trans Union's alternative motion for partial summary judgment be granted as to each of plaintiff's claims to the extent premised on violation of 15 U.S.C. § 1681e(b) only, and in all other respects denied.

## FACTUAL BACKGROUND

In 2001, Saenz incurred a medical bill in the amount of $512.31 that he was unable to pay on a timely basis. The debt went into collection and was sold to former defendant NCO. Later, on August 15, 2003, NCO accepted a compromise payment of $333 in full satisfaction of the

Page 2 - FINDINGS AND RECOMMENDATION

outstanding debt.

Also on August 15, 2003, Saenz requested and received a copy of his Trans Union credit report. The report listed the NCO collection as outstanding, with a $512 balance owing. On that same day, Saenz formally disputed the $512 balance with Trans Union, stating only "I have paid this account in full." Trans Union responded by initiating an automated consumer dispute verification ("ACDV") procedure to determine whether NCO's records listed the debt as outstanding. An ACDV is an automated procedure whereby a reporting agency matches its electronic data against electronic data provided by a creditor; if the data match, the information in the credit report is deemed verified. In this case, NCO's automated systems provided electronic data indicating that the $512 collection remained unpaid, and Trans Union concluded that the balance had been correctly reported. On September 12, 2003, Trans Union sent Saenz a copy of its reinvestigation report.

On September 30, 2003, Saenz again disputed the NCO balance, this time providing documentary evidence suggesting that the debt had been paid in full. Specifically, Saenz sent and Trans Union received at least the following documents:

(i)     a June 21, 2003, letter from NCO to Saenz offering to accept payment of $333 in settlement of the entire $512 collection balance if such payment were received by NCO not later than August 15, 2003;

(ii)    an August 11, 2003, receipt for Saenz' purchase of a money order payable to NCO in the amount of $333; and

(iii)   a certified mail receipt indicating that certified mail was sent by Saenz to NCO on August 11, 2003, and received by NCO on August 15, 2003.

Page 3 - FINDINGS AND RECOMMENDATION

It appears from the record that Saenz may inadvertently have omitted to provide, in addition, a copy of the successfully negotiated August 11, 2003, money order.

On October 7, 2003, Trans Union responded to Saenz' second attempt to dispute his credit report by initiating a second ACDV procedure with NCO. Again, the data provided by NCO's automated systems erroneously verified the outstanding collection balance of $512. Trans Union did not provide NCO with copies, summaries, or descriptions of the documents it received from Saenz, nor did it make inquiry of either NCO or Saenz as to the authenticity of the documents or as to NCO's receipt of Saenz' payment. On October 9, 2003, Trans Union sent Saenz a copy of its second reinvestigation report, indicating that the NCO balance was verified.

On July 22, 2004, Saenz again requested a copy of his Trans Union credit report. He received in response a report dated July 28, 2004, on which the $512 balance continued to be reported as an outstanding collection item. The NCO balance was not removed from Saenz' Trans Union credit report until approximately January 2007, after this action was filed.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the

Page 4 - FINDINGS AND RECOMMENDATION

nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence.  *See*, *e.g.*, *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## ANALYSIS

**I**      **Violation Of The Fair Credit Reporting Act**

Pursuant to 15 U.S.C. § 1681o(a), a consumer reporting agency which *negligently* violates its obligations to a consumer under the Fair Credit Reporting Act is liable to the consumer for his or her actual damages, as well as costs and attorney fees.  Pursuant to 15 U.S.C. § 1681n(a), such an agency which *willfully* violates its FCRA obligations is liable for the consumer's actual damages or an amount between $100 and $1000, as well as costs and attorney fees and, in the discretion of the court, punitive damages.  As noted above, plaintiff's claims under Section 1681o and Section 1681n are each premised on Trans Union's alleged violation of two discrete FCRA obligations:  to "follow reasonable procedures to assure maximum possible accuracy" of consumer reports, as required by 15 U.S.C. § 1681e(b), and to "conduct a reasonable reinvestigation" of information contained in a consumer report once that information is disputed by a consumer, as required by 15 U.S.C. § 1681i.  For the reasons set forth below, this court recommends finding that Trans Union is not entitled to summary judgment, but rather is entitled to partial summary judgment as to both of Saenz' claims to the extent premised on violation of Section 1681e(b) only.

**A.**      **15 U.S.C. § 1681e(b):  Reasonable Procedures To Assure The Accuracy Of Consumer Reports**

The FCRA requires that consumer reporting agencies adopt and follow "reasonable procedures" to assure the "maximum possible accuracy" of consumer reports::

Page 5 - FINDINGS AND RECOMMENDATION

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).

To survive a defense motion for summary judgment, an FCRA plaintiff alleging violation of Section 1681e(b) need only make a minimal presentation of evidence from which a trier of fact could conclude that the consumer reporting agency failed to follow reasonable accuracy-assuring procedures. As the Ninth Circuit has noted:

> In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information.  The FCRA does not impose strict liability, however - an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures.  **The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases.**

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citations and footnotes omitted; emphasis supplied); *see also Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) ("The determination of the 'reasonableness' of the defendant's procedures . . . is treated as a factual question even when the underlying facts are undisputed.  It therefore cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the procedures is beyond question. . ."); *Cairns v. GMAC Mortg. Corp.*, 2007 U.S. Dist. LEXIS 16689, *11 (D. Ariz. 2007) ("prior to sending a section § 1681e(b) claim to the jury, a credit reporting agency can usually prevail **only** if a court finds, as a matter of law, that a credit report was accurate") (emphasis original).

Here, it is clear that Saenz has met his *prima facie* burden:  the evidence establishes that his $512 NCO collection balance had been satisfied by compromise payment of $333 as of

August 15, 2003, whereas Trans Union's July 2004 credit report continued to list the balance as outstanding. Saenz argues, first, that under *Guimond* evidence sufficient to meet his *prima facie* burden necessarily creates a jury question as to the reasonableness of Trans Union's accuracy-assuring procedures. This court disagrees.

The *Guimond* language cited above could arguably be read, as Saenz appears to do, to interpret Section 1681e(b) as burden-shifting, so that it would fall to defendant to establish the reasonableness of its procedures once plaintiff established the inaccuracy of defendant's report. However, a more parsimonious reading of both *Guimond* and Section 1681e(b) is that the burden of proof remains on the plaintiff, but is so minimal that in the "overwhelming majority of cases" a jury could infer the unreasonableness of a defendant's procedures from the fact that those procedures permitted an inaccuracy to occur. Moreover, the statement that evidence of inaccuracy would be sufficient to survive summary judgment only in a *majority* of cases necessarily forecloses the burden-shifting interpretation. Properly understood, *Guimond* stands for the proposition that where – and only where – evidence of inaccuracy permits the conclusion that a consumer reporting agency's accuracy-assuring procedures are unreasonable, such evidence is minimally sufficient to create a question of fact for jury determination.

On the record before the court, however, the inaccuracy at issue here simply does not permit any inference as to the reasonableness of Trans Union's procedures. As Saenz conceded in deposition testimony, at all material times NCO affirmatively maintained that the debt remained outstanding. Moreover, before Saenz disputed the NCO balance and thereby placed Trans Union on notice that NCO's information might be inaccurate, Trans Union was entitled to rely on facially credible information it received from Saenz' creditors. *See* 16 C.F.R. 600, §

607.3(A) ("If a consumer reporting agency accurately transcribes, stores  and communicates consumer information received from a source that it  reasonably believes to be reputable, and which is credible on its face, the agency does not violate [Section 1681e(b)] simply by reporting an item of information that turns out to be inaccurate"); *see also*, *e.g.*, *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285-286 (7th Cir. 1994); *Cairns*, 2007 U.S. Dist. LEXIS at *18-19.  The inaccurate information that appeared in the Trans Union credit report was therefore not attributable to Trans Union's Section 1681e(b) procedures.

Saenz further argues that the reasonableness of Trans Union's reinvestigations following Saenz' two disputes of the NCO balance is material to the Section 1681e(b) inquiry.  Again, this court disagrees.  First, a consumer reporting agency's FCRA duty to maintain reasonable accuracy-assuring procedures is codified separately and distinctly from the duty to conduct reasonable reinvestigation following a consumer dispute of credit report information, *see* 15 U.S.C. §§ 1681e(b), 1681i, and this court makes every effort not to interpret one provision of a statute in such a manner as to render another provision superfluous, *see Chowdhury v. INS*, 249 F.3d 970, 973 (9th Cir. 2001).  Second, the Federal Trade Commission commentary on Section 1681e(b) suggests that an agency's Section 1681e(b) obligations relate to the maintenance and operation of its own internal databases rather than to investigation of the accuracy of information received from external sources:

> [W]hen a consumer reporting agency learns or should reasonably be aware of **errors in its reports that may indicate systematic problems** (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise) it must review its procedures for assuring accuracy. Examples of errors that would require such review are the **issuance of a consumer report pertaining entirely to a consumer other than the one on whom a report was requested**, and the **issuance of a consumer report containing information on two or more consumers** (*e.g.*, **information that was**

> **mixed in the file**) in response to a request for a  report on only one of those
> consumers.

16 C.F.R. 600, § 607.3(A) (emphasis supplied).  Finally, although the Ninth Circuit has not yet

addressed the question, other courts have found that unreasonable reinvestigation procedures  in

violation of Section 1681i do not place an agency in violation of Section 1681e(b).  *See*, *e.g.*,

*Henson*, 29 F.3d at 285-286; *Cairns*, 2007 U.S. Dist. LEXIS at *18-19.  Evidence that an

agency's reinvestigation procedures were unreasonable is therefore not competent to support a

Section 1681e(b) claim.

Because there is no evidence in the record from which a reasonable jury could infer that

Trans Union's accuracy-assuring procedures were unreasonable, this court recommends granting

Trans Union's motion in part, dismissing Saenz' claims to the extent premised on violation of

Section 1681e(b).

### B.     15 U.S.C. § 1681i:  Obligation To Conduct A Reasonable Reinvestigation

The FCRA requires that consumer reporting agencies conduct "reasonable

reinvestigation[s]" of consumer information whenever information contained in a consumer

report is disputed by the consumer:

> [I]f the completeness or accuracy of any item of information contained in a
> consumer's file at a consumer reporting agency is disputed by the consumer and
> the consumer notifies the agency directly . . . of such dispute, the agency shall,
> free of charge, conduct a reasonable reinvestigation to determine whether the
> disputed information is inaccurate and record the current status of the disputed
> information, or delete the item from the file . . . before the end of the 30-day
> period beginning on the date on which the agency receives the notice of the
> dispute from the consumer . . . .

15 U.S.C. § 1681i(a)(1)(A).

In the course of such a "reasonable reinvestigation" of consumer information, an agency

is required to provide to the creditor in question "all relevant information" it received from the consumer:

> The consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer . . . .

15 U.S.C. § 1681i(a)(2)(B).  An agency conducting a reinvestigation is further required to conduct its own review of  the "relevant information" it received from the consumer:

> In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information.

15 U.S.C. § 1681i(a)(4).

Based on the plain language of the statute, this court concludes that among the required elements of a claim alleging violation of Section 1681i are the following:  (i) the plaintiff's credit report contains inaccurate or incomplete information, *see* 15 U.S.C. § 1681i(a)(1); (ii) the plaintiff notified the consumer reporting agency directly of the inaccurate or incomplete information, *see id.*; (iii) the plaintiff's dispute is not frivolous or irrelevant, *see* 15 U.S.C. § 1681i(a)(3); and (iv) the consumer reporting agency failed to respond to the plaintiff's dispute with a reasonable reinvestigation, *see* 15 U.S.C. § 1681i(a)(1), (2), (4), and (6).  In addition, a claim for *negligent* violation of Section 1681i necessarily requires proof of damages and causation, in order to satisfy the case or controversy requirement imposed by Article III of the United States Constitution.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107-08 (1998).  By contrast, because the FCRA provides for money damages *in lieu of* actual damages in case of willful violations, a plaintiff need not prove damages and causation to maintain a Section 1681i cause of action under Section 1681n(a).  Thus, a Section 1681i plaintiff

must further prove either (i) damages and causation or (ii) that the reporting agency's failure to reinvestigate reasonably was willful.

There is no serious dispute as to most of the essential elements of Saenz' Section 1681i claim. As noted above, Saenz' July 2004 credit report clearly contained inaccurate information, and Saenz disputed the inaccurate information in good faith. In connection with his second dispute, evidence in the record establishes that Saenz provided Trans Union with documents suggesting that the NCO balance had been paid in full. Finally, it is not in dispute that Trans Union relied exclusively on its ACDV system to conduct its Section 1681i reinvestigation. Thus, the matter chiefly in contention here is whether, as a matter of law, Trans Union's exclusive reliance on automated data-matching procedures satisfied its several reasonable reinvestigation obligations.

Trans Union argues that use of ACDV procedures is necessarily reasonable for Section 1681i purposes, apparently without regard to whether a consumer has alerted a reporting agency to the possibility that a specified creditor's information may be inaccurate. Trans Union buttresses its argument with the assertion that creditors are better situated than reporting agencies to determine the accuracy of disputed information. Trans Union's argument rests upon a significant mischaracterization of its duties under the FCRA.

The Ninth Circuit has not yet had occasion to address the question now before this court. However, the Third Circuit has expressly rejected the argument that automated consumer dispute verification procedures are reasonable as a matter of law, holding that:

> The plain language of the [FCRA] places the burden of reinvestigation on the consumer reporting agency. The FCRA evinces Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear "grave responsibilities," 15 U.S.C. §

1681(a)(4), to ensure the accuracy of that information.  The "grave responsibility" imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources.  **Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.**

In addition to these observations, we note that [Trans Union]'s reading of § 1681i(a) would require it only to replicate the efforts it must undertake in order to comply with § 1681e(b).  Such a reading would render the two sections largely duplicative of each other.  We strive to avoid a result that would render statutory language superfluous, meaningless, or irrelevant.

*Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (emphasis supplied).

*Cushman* has frequently been cited with approval, including by district courts within the

Ninth Circuit.  *See*, *e.g.*, *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1083 (D. Cal. 2006)

("TransUnion seeks to deflect responsibility for this inaccuracy to the creditors upon whom it

relies for information and falls back on its assertion that 'a creditor is in a better position than a

consumer reporting agency with regard to the ability to detect and correct errors in the reporting

of a consumer's account.'  . . .This hardly suffices to establish, as a matter of law, that a

'reasonable reinvestigation' amounts to an inquiry that goes only to confirmation of the accuracy

of information from its original source").  Indeed, it appears to be the majority view that, where a

reporting agency is affirmatively on notice that information received from a creditor may be

suspect, it is not reasonable for the agency simply to verify the creditor's position without

additional investigation:

In deciding similar claims, courts have reasoned that . . . **exclusive reliance on furnishers of credit information and standardized procedures such as partial matching logic may not be justified once the credit reporting agency receives notice that the consumer disputes information contained in his or her credit report**.  When a credit reporting agency receives such notice, it can target its resources in a more efficient manner and conduct a more thorough investigation. In such situations, it would make little sense to conclude that, in creating a system intended to give consumers a means to dispute -- and, ultimately, correct --

inaccurate information on their credit reports, Congress used the term 'investigation' to include only superficial inquiries by creditors that do not look beyond the automated information in their own computer systems and never consult underlying documents such as account applications and the like.

Similarly, **there are circumstances in which the FCRA may require a credit-reporting agency to go beyond the initial [A]CDV process and verify the accuracy of its initial source of information**.  Courts determine the existence and extent of such a requirement by balancing the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer, which in turn will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable.  Once a claimed inaccuracy is pinpointed, a consumer reporting agency conducting further investigation incurs only the cost of reinvestigating that one piece of disputed information.  In such instances, the likelihood that the cost-benefit analysis will shift in favor of the consumer increases markedly.

*Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1231 (D.N.M. 2006) (citations, internal quotation marks, and internal modifications omitted; emphasis supplied).

This majority view is clearly correct where, as here, exclusive reliance on an ACDV system causes a reporting agency entirely to neglect its Section 1681i(a)(2)(B) obligation to provide "all relevant information" to the creditor from whom it received disputed information, or its Section 1681i(a)(4) obligation to consider and review that information independently.  Trans Union was provided with documentary evidence sufficient to place it on notice of the likelihood that NCO's information was inaccurate.  A reasonable jury could infer from Trans Union's failure to provide NCO with copies or a summary of the evidence it received, or to conduct any independent consideration or investigation of Saenz' assertion that the balance had been paid, that the agency's reinvestigation was unreasonable.

As discussed below, the evidence in the record supports Saenz' claim to have suffered cognizable damages caused by Trans Union's failure to conduct a reasonable reinvestigation.

Moreover, also as discussed below, a reasonable jury could conclude from the evidence that Trans Union's alleged failure was willful.  Because the record creates a question of fact as to the reasonableness of Trans Union's reinvestigation, this court therefore recommends denial of Trans Union's motion for summary judgment, and denial of its motion for partial summary judgment as to Saenz' claims to the extent they are premised on violation of Section 1681i.

**II    Damages**

**A.    Economic Damages**

Trans Union asserts that Saenz has failed to produce evidence of economic damages, emphasizing in particular that Saenz has not produced evidence that he was ever denied credit on the basis of a Trans Union credit report.  On this basis, the agency argues that it is entitled to partial summary judgment both as to Saenz' Section 1681o claim and generally as to his entitlement to monetary damages.  However, it is well established that a plaintiff need not have suffered denial of credit to prevail on an FCRA claim.  *See*, *e.g.*, *Guimond*, 45 F.3d at 1333 (noting that "no case has held that a denial of credit is a prerequisite to recovery under the FCRA" and holding that fees incurred in requesting credit reports, *inter alia*, could constitute an allegation of damages sufficient to sustain an FCRA claim).

Here, the record establishes that Saenz requested copies of his credit report in order to ascertain whether Trans Union had removed the disputed information, and incurred costs for copying and faxing the documentary evidence he provided in connection with his disputes.  These out-of-pocket costs constitute cognizable economic damages for FCRA purposes.  This court therefore recommends that Trans Union's motion for partial summary judgment be denied both as to Saenz' Section 1681o claim and as to his entitlement to recovery of economic

damages.

**B.    Emotional Distress Damages**

In addition to his out-of-pocket costs, Saenz seeks award of emotional distress damages.

"The term 'actual damages' has been interpreted to include recovery for emotional distress and

humiliation" for FCRA purposes.  *Guimond*, 45 F.3d at 1333.  In support of his claim to have

suffered emotional distress, Saenz has placed into the record his own testimony and that of two

additional lay witnesses.  He does not offer "objective" evidence such as records of medical or

psychological health care, or the testimony of such a care provider.

Trans Union asserts that, as a matter of law, the evidence Saenz offers is insufficient,

citing case law from outside the Ninth Circuit in support of the proposition that emotional

distress damages must be established with specificity.  However, although the Ninth Circuit has

not addressed the evidentiary requirements for emotional distress damages in the specific context

of the FCRA, it has done so elsewhere and has expressly rejected the specificity standard

invoked by Trans Union.  As noted by the court for the District of Arizona:

> The Ninth Circuit has not addressed the type of evidence necessary to support an
> award of emotional distress damages under the FCRA, but has stated in other
> contexts that "while objective evidence requirements may exist in other circuits,
> such a requirement is not imposed by case law in the Ninth Circuit, or the
> Supreme Court."  *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th
> Cir. 2003) (holding in a discrimination action that the plaintiff's "testimony alone
> is enough to substantiate the jury's award of emotional distress damages") (ellipsis
> and citations omitted).  *See also Johnson v. Hale*, 13 F.3d 1351, 1352-53 (9th Cir.
> 1994) (recognizing that "compensatory damages may be awarded for humiliation
> and emotional distress established by testimony or inferred from the
> circumstances, whether or not plaintiffs submit evidence of economic loss or
> mental or physical symptoms.").

> * * *

While the Plaintiff certainly has not offered overwhelming evidence of emotional

distress damages, the evidence is sufficient to create a question for the jury, particularly when all factual disputes and possible inferences are resolved in the Plaintiff's favor.  The Court will therefore deny [defendant]'s motion for summary judgment regarding emotional distress damages.

*Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092, 1101 (D. Ariz. 2003); *see also Rothery v. Trans Union, LLC*, 2006 U.S. Dist. LEXIS 44959 (D. Or. 2006) (characterizing the applicable evidentiary burden as "low" and finding that a plaintiff's "own subjective account and the declaration of her mother . . . present[ing] evidence of emotional distress, humiliation, damage to reputation and loss of opportunities as a result of the reporting of false information" were sufficient for an emotional distress damages claim to survive summary judgment).

Because Saenz has produced evidence that he suffered embarrassment, humiliation, and anxiety attacks, this court recommends that Trans Union's motion for partial summary judgment be denied both as to Saenz' Section 1681o claim and as to his entitlement to recovery for emotional distress damages.

**III    Willful Violation**

Although Trans Union's motion expressly addresses "willfulness" only as an element of Saenz' request for award of punitive damages, Saenz must demonstrate Trans Union's willful violation of the FCRA in order to prevail in connection with his Section 1681n claim as well as with his petition for punitive damages.  *See* 15 U.S.C. § 1681n(a).

The Ninth Circuit addressed the FCRA willfulness standard in *Reynolds v. Hartford Fin. Servs. Group, Inc.*, 435 F.3d 1081, 1085 (9th Cir. 2006), in which the court expressly adopted the standard articulated by the Third Circuit in *Cushman*, 115 F.3d at 227:

We begin by following all five of the other circuits that have addressed the issue of the *mens rea* that is required with regard to the *act* that allegedly violates FCRA and hold that the act must have been performed "knowingly and

intentionally."   *See Phillips v. Grendahl*, 312 F.3d 357, 370 (8th Cir. 2002);
*Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001);
*Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001); *Duncan v.
Handmaker*, 149 F.3d 424, 429 (6th Cir. 1998); *Cushman v. Trans Union Corp.*,
115 F.3d 220, 226 (3d Cir. 1997).  . . .  Additionally, we adopt the position of four
of the five other circuits and hold that, although the act must be intentional, it
need not be the product of "malice or evil motive."  *See*, *e.g.*, *Dalton*, 257 F.3d at
418 (holding that a plaintiff need not show malice or evil motive); *Cousin*, 246
F.3d at 372 (same); *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998);
*Cushman*, 115 F.3d at 226 (same). . . .

Next, we address the more difficult question:  **What is the nature of the *mens
rea* that is required with respect to the law?  Here, we follow the Third
Circuit.** Specifically, we hold that as used in FCRA **"willfully" entails a
"conscious disregard" of the law, which means "either knowing that policy
[or action] to be in contravention of the rights possessed by consumers
pursuant to the FCRA or in reckless disregard of whether the policy [or
action] contravened those rights."** *Cushman*, 115 F.3d at 227.  We adopt this
holding for two principal reasons.

First, we believe that the Third Circuit's definition best comports with Supreme
Court precedent. . . .

Second, the Third Circuit's approach best furthers the purposes and objectives of
the [FCRA].  It is fair and balanced; it is practical as well.  It avoids the two
extremes of excusing non-compliance even though the answer to a previously
undecided question is objectively apparent and imposing liability notwithstanding
a truly excusable inability to predict future developments in the evolving
construction of a statute by the courts.  It encourages companies that use
consumer credit reports to make the necessary effort to inform themselves fully
and fairly as to their statutory obligations and, as a result, to carry out the
statutory mandate of ensuring that consumers are notified when their credit
information has been used against them.  **Unlike the defendants' preferred
definition, the Third Circuit's standard does not create perverse incentives
for companies covered by FCRA to avoid learning the law's dictates** by
employing counsel with the deliberate purpose of obtaining opinions that provide
creative but unlikely answers to "issues of first impression."  Because a reckless
failure to comply with FCRA's requirements can result in punitive damages,
insurance and other companies will more likely seek objective answers from their
counsel as to the true meaning of the statute.

In sum, **if a company knowingly and intentionally performs an act that
violates FCRA, either knowing that the action violates the rights of
consumers or in reckless disregard of those rights, the company will be liable**

**under 15 U.S.C. § 1681n for willfully violating consumers' rights.** A company will not have acted in reckless disregard of a consumers' rights if it has diligently and in good faith attempted to fulfill its statutory obligations and to determine the correct legal meaning of the statute and has thereby come to a tenable, albeit erroneous, interpretation of the statute. In contrast, neither a deliberate failure to determine the extent of its obligations nor reliance on creative lawyering that provides indefensible answers will ordinarily be sufficient to avoid a conclusion that a company acted with willful disregard of FCRA's requirement. Reliance on such implausible interpretations may constitute reckless disregard for the law and therefore amount to a willful violation of the law.

*Reynolds*, 435 F.3d at 1099[1]; *see also Cushman*, 115 F.3d at 227 ("If [plaintiff] can prove . . .

that [Trans Union] adopted its reinvestigation policy either knowing that policy to be in

contravention of the rights possessed by consumers pursuant to the FCRA or in reckless

disregard of whether the policy contravened those rights, []he may be awarded punitive

damages").

The *Reynolds* court's reasoning is highly persuasive, and has been followed by numerous

district courts, both within and without the Ninth Circuit. *See*, *e.g.*, *Lenox v. Equifax Info. Servs.

LLC*, 2007 U.S. Dist. LEXIS 34453, *15-16 (D. Or. 2007); *Lambert v. Beneficial Mortg. Corp.*,

2007 U.S. Dist. LEXIS 33119, *16-17 (D. Wash. 2007); *Pirian v. In-N-Out Burgers*, 2007 U.S.

Dist. LEXIS 25384, *20-21 (D. Cal. 2007); *Blanco v. El Pollo Loco, Inc.*, 2007 U.S. Dist.

LEXIS 31231, *7-8 (D. Cal. 2007); *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1279

(D. Ga. 2006). Indeed, the District of New Mexico found that:

---

[1]The United States Supreme Court granted *certiorari* to consider *Reynolds* in *GEICO Gen. Ins. Co. v. Edo*, 127 S. Ct. 36 (2006), and subsequently dismissed *certiorari* in *Hartford Fire Ins. Co. v. Reynolds*, 167 L. Ed. 2d 835 (2007). Oral argument was heard in the ongoing *GEICO* case on January 16, 2007; no opinion has yet issued. It therefore remains possible that the Supreme Court's forthcoming decision in *GEICO* could require modification of the standard adopted in *Reynolds*. However, until such a ruling issues, *Reynolds* remains the law of this circuit.

Page 18 - FINDINGS AND RECOMMENDATION

the authorities cited in favor of the "reckless disregard" standard provide a more cogent and balanced approach to the definition of "willfulness" in th[e FCRA] context.  Under this approach, the term "willfully" entails a "conscious disregard" of the law, which means "'either knowing that policy . . . to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy . . . contravened those rights.'"  *Reynolds*, 435 F.3d at 1098 (*quoting Cushman*, 115 F.3d at 227).  **Allowing FCRA plaintiffs to prove willfulness by showing a defendant's "reckless disregard" of the law's requirements is more appropriate in this context because it accords with Supreme Court precedent distinguishing civil liability from criminal liability, and because it best furthers the purposes and objectives of the FCRA.**  *See* 435 F.3d at 1098, *id.* at *13-14.

In contrast, requiring FCRA plaintiffs to prove the defendant actually knew that it was violating the law would "create perverse incentives" for credit reporting agencies to pursue a policy of deliberate ignorance of the law in order to avoid liability for punitive damages.

*Apodaca*, 417 F. Supp. 2d at 1229 (emphasis supplied).

Here, Trans Union knowingly and intentionally elected to rely exclusively on automated procedures in attempting to satisfy its Section 1681i obligations.  In light of numerous court decisions finding such automated procedures unreasonable where, as here, a consumer reporting agency was on notice of the possible inaccuracy of the automated responses the creditor would provide, a jury could find that Trans Union did so in reckless disregard of the possibility that it would thereby violate of the law.  Under the *Reynolds* standard, there is therefore a question of fact as to whether Trans Union acted willfully.

Moreover, the same conclusion would apply with equal force under an "actual knowledge" standard of willfulness.  Reporting agencies are required to "provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer," 15 U.S.C. § 1681i(a)(2)(B), and independently to "review and consider all relevant information submitted by the consumer," 15 U.S.C. §

Page 19 - FINDINGS AND RECOMMENDATION

1681i(a)(4).  Where, as here, a consumer provides relevant documentary evidence in support of his or her dispute, an ACDV system cannot comply with either the information-transmittal requirement or the independent consideration requirement.  Even under a more stringent standard than that currently binding on this court, therefore, the evidence in the record would create a question of fact as to whether Trans Union had actual knowledge that its automated procedures would fail to comply with those FCRA requirements triggered by its receipt of relevant documentary evidence.

Because under any applicable standard there is a question of fact as to Trans Union's willfulness, this court recommends that Trans Union's motion for partial summary judgment be denied both as to Saenz' Section 1681n claim and as to his entitlement to recovery of punitive damages.

## CONCLUSION

For the reasons set forth above, this court recommends denying defendant Trans Union's motion for summary judgment (#43), granting Trans Union's alternative motion for partial summary judgment as to plaintiff's 15 U.S.C. §§ 1681n and 1681o claims to the extent premised on violation of 15 U.S.C. § 1681e(b) only, and denying the motion for partial summary judgment in all other respects.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due June 19, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed,

Page 20 - FINDINGS AND RECOMMENDATION

a response to the objections is due fourteen days after the date the objections are filed and the

review of the Findings and Recommendation will go under advisement on that date.


Dated this 5th day of June, 2007.


 /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge